IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-02514-RBJ-MEH

DENISE TRAYNOM, and
BRANDON K. AXELROD,
Plaintiffs,
v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.
_____

Civil Action No. 12-cv-02517-RBJ-MEH
JOSHUA R. NOWLAN,
Plaintiffs,
v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.
_____

Civil Action No. 12-cv-02687-RBJ-MEH
DION ROSBOROUGH,
RYAN LUMBA,
TONY BRISCOE,
JON BOIK, next friend of Alexander Boik, and
LOUIS DURAN,
Plaintiffs,
v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.
_____

Civil Action No. 12-cv-02704-RBJ-MEH
JERRI JACKSON,
Plaintiff,
v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.
_____

Civil Action No. 12-cv-02705-RBJ-MEH
GREGORY MEDEK, and
RENA MEDEK,
Plaintiffs,

1

v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.

_____

Civil Action No. 12-cv-02706-RBJ-MEH
THERESA HOOVER,
Plaintiff,
v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.

_____

Civil Action No. 12-cv-2900
IAN SULLIVAN,
Plaintiff,
v.
CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.

_____

Civil Action No. 13-cv-00114-RBJ-MEH
LYNN JOHNSON, MACHAEL SWEENEY, MALIK
SWEENEY by and through his parents and next friends
MACHAEL SWEENEY and LYNN JOHNSON,
MALACHI SWEENEY AND MACHI SWEENEY,
v.
CENTURY THEATERS, INC.; CINEMARK USA, INC.,
d/b/a CENTURY AURORA 16,
Defendants.

_____

Civil Action No. 13-cv-00045-RBJ-MEH
CHICHI SPRUEL and
DERICK SPRUEL,
Plaintiffs,
v.
CINEMARK, USA, INC., d/b/a CENTURY AURORA 16
Defendant

_____

2

Civil Action No. 13-cv-00046
MUNIRIH F. GRAVELLY,
Plaintiff,
v.
CINEMARK, USA, INC.,
d/b/a CENTURY AURORA 16,
Defendant.

# ORDER

These cases are before the Court on motions to dismiss filed by defendant Cinemark. On November 27, 2012 the Court referred the seven cases then pending to United States Magistrate Judge Michael E. Hegarty for various purposes including the preparation of a recommendation on the motions to dismiss. On January 24, 2013 the magistrate judge issued his recommendation that the motions be granted in part and denied in part. Cinemark filed a timely objection to the recommendation. Certain plaintiffs have objected to the magistrate judge's recommendation to dismiss their wrongful death claims.

Meanwhile, three additional cases have been filed. Cinemark filed similar motions to dismiss those cases, and the motions have now been fully briefed. There is no reason to refer the additional cases to the magistrate judge at this time, because the motions and issues are essentially the same as those on which he has issued his recommendation. For the reasons set forth herein, the Court dismisses the negligence claims but denies the motions to dismiss the statutory claims.

## I.     FACTS.

These cases arise from the tragic shootings that occurred at the Century Aurora 16 theater complex in Aurora, Colorado on July 20, 2012. For purposes of a motion to dismiss for failure to state a claim upon which relief could be granted under Fed. R. Civ. P. 12(b)(6) the Court must

3

assume the truth of all well-pleaded allegations of fact and draw all rational inferences from those assumed facts in favor of the plaintiffs. Therefore, solely for purposes of resolving the pending motions, the Court assumes the truth of the following facts.

Before July 20, 2012 Cinemark knew that previous disturbances, incidents, disruptions and other criminal activities had occurred at or near the property of the theater. These incidents typically occurred during the evening hours and included assaults, robberies and at least one shooting near the theater involving gang members. Based on that knowledge Cinemark hired security personnel including off-duty law enforcement officers from the Aurora Police Department to be present on Friday and Saturday evenings.

July 19, 2012 was a Thursday. The movie, "The Dark Knight Rises," was scheduled to premiere that night at midnight. Cinemark advertised and sold tickets and, anticipating large crowds, scheduled showings in more than one auditorium. However, although security personnel were present earlier in the day when box office cash was being transferred, no security personnel were hired or were present when the movie was to be shown. The exterior doors to the theaters did not have an alarm system, an interlocking security system, or any other security or alarm features that would put Cinemark's employees or security personnel on notice if someone exited the theater through the exterior door, or left the door in an open position, or re-entered through the door. Cinemark did not have in place any security practices or procedures, nor did it employ or adequately train any employee or security personnel to prevent or deter someone from surreptitiously and unlawfully re-entering the theater through an unlocked and unalarmed door.

The theater complex had public parking available on all sides including behind Auditorium 9. However, there was no system or procedure for theater personnel to survey or monitor the parking areas behind or to the sides of the theaters. The failure to monitor the

4

parking areas near the theater and the external doors made it possible for a person to re-enter the theater without fear of interference, interruption or chance at being discovered and to leave the door open for a period of time.

An individual present for the midnight showing, referred to as "the gunman," purchased a ticket and entered Auditorium 9 through the normal patron entrance. After the theater was darkened and the screen projection began the gunman left his seat and exited the theater to the outside parking area through a door located at the right, front side of the movie screen, leaving the door ajar so that it would remain open. He went to his car, which was parked near the same exterior door to Auditorium 9, and withdrew one or more fully loaded shotguns; an AR-15 assault rifle, with a fully loaded "banana clip;" one or more fully loaded automatic Glock handguns; additional ammunition; and several tear gas canisters. He also put on body armor and a gas mask. The gunman made one or more trips from his car through the open exterior door to Auditorium 9, with his firearms, ammunition and tear gas. This took an extended period of time, but he was not monitored, deterred or contacted by theater personnel.

After throwing tear gas canisters into the auditorium, the gunman opened fire with his various firearms, continuing over the course of several minutes until his weapon jammed. He killed 12 theater patrons and injured many others. The plaintiffs in these cases are persons who were injured, physically and emotionally, and family members of persons who were killed or injured. After his weapon jammed, the gunman walked out the same door and sat in his car until he was arrested by police. Theater personnel did not intervene during the course of the shooting. For several minutes after the shooting had stopped theater personnel still took no action to assist or to evacuate the injured who were still present in Auditorium 9.

Based on these events plaintiffs have filed claims of premises liability under the Colorado Premises Liability Act, C.R.S. §§ 13-21-115; common law negligence; and as to some plaintiffs who are parents of deceased victims, a statutory wrongful death claim. Magistrate Judge Hegarty recommended that the motions be granted with respect to the negligence and wrongful death claims but denied with respect to claims under the Premises Liability Act. Cinemark objected to the magistrate judge's recommendation concerning the Premises Liability Act claims. The plaintiffs who have asserted statutory wrongful death claims have objected to the recommendation that those claims be dismissed.

## II.   STANDARD OF REVIEW.

This Court reviews de novo any part of a magistrate judge's recommendation on a disposition motion to which a timely objection has been made. Fed. R. Civ. P. 72(b)(3).

## III.   CONCLUSIONS.

### A.   Premises Liability Act

I suspect that many people, despite overwhelming sympathy and grief for the victims of the Aurora theater shootings, might upon hearing about these lawsuits have had reactions like, "how could a theater be expected to prevent something like this?" I confess that I am one of those people.

Initial reactions aside, however, the pending motions present difficult questions of interpretation and application of law. I start with a bit of history. Before 1986 the recourse of an individual who was injured on another's land was generally determined by common law negligence. He must show (1) that the landowner owed him a legal duty to act to avoid injury; (2) which the landowner breached, (3) thereby causing the injury. The court determined the existence and scope of the duty as a matter of law, considering such factors as the risk involved,

the foreseeability and likelihood of the injury, the social utility of the landowner's conduct, and the magnitude of the burden that would be placed on the landowner of guarding against the injury.  *See, e.g., Taco Bell v. Lannon,* 744 2d 43, 46 (Colo. 1987).

That changed when the Colorado General Assembly enacted the Premises Liability Act, C.R.S. 13-21-115.  The statute applies to "any civil action against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property."  *Id.* § 2. Intending among other things "to protect landowners from liability in some circumstances when they were not so protected at common law," *id.* § 1(c), the statute defines landowners' duties according to the plaintiff's status as either a trespasser, a licensee or an invitee.

In the present cases it is undisputed that Cinemark is a "landowner," and that the plaintiffs were "invitees."  The statute provides, as relevant here, that "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known."  *Id.* § 3(c)(I).  Thus, the Court does not define Cinemark's duty to the plaintiffs.  Rather, the statute provides that Cinemark owes its theater patrons a duty to exercise reasonable care to protect them against dangers of which Cinemark knew or should have known.  *See Lombard v. Colorado Outdoor Education Center, Inc.,* 187 P.3d 565, 568 (Colo. 2008).

The difficulty in these cases is to determine what the relevant "danger" is.  Plaintiffs allege that the dangerous conditions on the premises include but are not limited to (1) failure to have security guards present, (2) failure to provide reasonable protection against surreptitious entry into a darkened theater, (3) failure to provide reasonable door entry security devices (locking systems, alarms), (4) failure to provide other reasonable security devices (one-way

7

security doors, exit doors interlocked with warning signals, alarms), (5) failure to develop adequate emergency response plans and procedures, (6) failure to provide proper employee training for emergency responses, and (7) failure to provide proper training on reasonable surveillance procedures. *E.g.,* First Amended Complaint in case 12cv2514 [#14] ¶46. However, in my view this is not a list of dangers. Rather, it is plaintiffs' view of the actions that a reasonable theater owner would take to protect patrons against an unspecified danger. *Cf. McIntire v. Trammell Crow, Inc.,* 172 P.3d 977, 980 (Colo. App. 2007)(although the danger must arise from the condition of the property or activities conducted or circumstances existing on the property, "it is not knowledge of the condition, activities or circumstances that gives rise to liability; it is the danger of which the owner actually knew or should have known").

In short, plaintiffs' list focuses on Cinemark's alleged failure to exercise reasonable care to protect against . . . what? A clue to the "what" can be found elsewhere in the same First Amended Complaint. In paragraph 45 plaintiffs allege that the "dangers include the fact of dangerous and criminal activity that had previously taken place at the theater." Earlier they alleged that Cinemark knew that "previous disturbances, incidents, disruptions and other criminal activities had taken place at or near the property of the theater," most commonly during the evening hours, including "assaults and robberies" and "at least one shooting, involving gang members." *Id.* ¶¶ 5, 8.

However, as a matter of common sense, there is a difference between assaults and robberies in the neighborhood (and what might be done to protect theater patrons from such acts) and a gunman's surreptitiously entering a theater and, without any motive or reason, randomly shooting as many innocent people as he could. *Cf. Lopez v. McDonald's Corp.*, 238 Cal. Rptr. 436, 445 (Cal App. 1987)(decided under a common law negligence standard).

In contrast, Cinemark's argument begins, "[t]he essence of the Amended Complaint is that Cinemark 'should have known' that James Holmes would commit a mass murderous assault in the Century 16 Theatre . . . on July 20, 2012."[1] Motion to Dismiss [#15] at 1.  To state the question that way is to answer it.  Of course Cinemark could not be expected to have known that a particular gunman would enter that particular theater on that particular night and commit a mass murder.  Even apart from the hyperbole, and despite the tragic fact that mass shootings have become more and more common in our society, this Court will not define the danger so narrowly as to essentially define it away.

Rather, it seems to me, the danger inherent in the construction and operation of this theater was that it allowed someone inside the theater surreptitiously to prop the door leading directly from the theater to the outside open and thereby to permit himself or others to enter the theater undetected and to commit a violent act against one or more patrons inside.  The questions then become, (1) did Cinemark know or should it have known that this danger existed, and, if so, (2) did it exercise reasonable care to protect patrons against this danger.

The first of those questions involves what Cinemark knew had happened in the past at this theater and what Cinemark generally knew or should have known about dangers faced by similar theaters.  Had there been instances where individuals had entered Cinemark theaters or other theaters surreptitiously through doors leading directly from a theater auditorium to the outside – not to "sneak in" to avoid the ticket price, but to commit a violent act?  Was this a phenomenon that was known or should have been known to Cinemark based on its knowledge of the theater industry?  This is where "foreseeability" comes in.  As indicated above, the foreseeability and likelihood of injury have historically been considered by Colorado courts in

---

[1] By citing this quote as it was written I do not intend in any way to express an opinion on the pending criminal case. A defendant in a criminal case is presumed innocent under the law.

determining whether a landowner owed a duty – a judicial task mooted by the Premises Liability Act. However, foreseeability is inherent in the determination of whether a landowner "should have known" that a particular danger existed.

The second question asks what a reasonable theater owner would do to protect theatergoers against the danger. I postulate that some means of relatively rapid egress is needed for the safety and protection of patrons in the event of an emergency. Would a reasonable theater have a door that allows direct access from the theater auditorium to the outside? Is it reasonable to secure the door with some type of interlock system or to fix it, as is sometimes done for example in courthouses, so that an alarm sounds if someone without an access card or code opens it? In what circumstances would a reasonable theater owner hire security personnel? Where would they be stationed? Would they be armed? What would they be trained to look for and to try to prevent? Is it reasonable to expect theater personnel to monitor either the inside or outside of the auditorium, such as by a video camera?

Defendant's argument, simply stated, is that these plaintiffs did not allege facts that are sufficient to show that Cinemark knew or should have known of the danger latent in the construction and operation of this theater. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678. The magistrate judge, although analyzing the case a little differently in some respects than has this Court, determined that plaintiffs'

allegations were sufficient to get by a Rule 12(b)(6) motion. Although I find that it is a close call, I ultimately agree.

Plaintiffs alleged that Cinemark knew that criminal activities had taken place "at or near" the theater. This included assaults, robberies and at least one shooting involving gang activity near the theater. These incidents which commonly occurred at night were such that Cinemark hired security personnel including off-duty law enforcement officers on Friday and Saturday nights when, it might be inferred, the theater drew larger crowds. Cinemark knew, of course, about the construction of the theater, including doors leading directly from a theater auditorium to the outside.

Plaintiffs have not alleged that any previous incident had occurred at this theater complex or another Cinemark theater where an individual had gained entry to a theater auditorium through an exterior door that had been propped open or left ajar and had then committed an act of violence against people in the auditorium. Plaintiffs have not alleged that it was known or suspected in the theater industry that an incident of that kind either had occurred in the past or might occur in the future. On the other hand, one would not necessarily expect that plaintiffs would have access to such facts. What Cinemark knew on July 19, 2012 may be known only to Cinemark at this point. There sometimes is a fine line between alleging sufficient facts to state a plausible claim and engaging in a fishing expedition.

In that regard I note that in the only Colorado case cited by either party where a trial court dismissed a claim under the Premises Liability Act for failure to state a claim, the dismissal was reversed. *Grizzell v. Hartman Enterprises, Inc.,* 68 P.3d 551, 554-55 (Colo. App. 2003). There an employee invited a victim and a perpetrator into a sandwich shop after it had closed. The perpetrator then killed both the victim and the employee. Plaintiff, a parent of the deceased

11

victim, alleged that the shop's owner knew that employees permitted persons to meet in a back room of the shop to discuss illegal drug activity. In reversing the trial court's dismissal the court of appeals panel stated, "Parent need not allege that owner had actual knowledge an armed assailant would come in the restaurant and kill the victims. Rather, parent only needed to allege that owner had an active awareness of the dangerous condition or, in this case, the criminal activity at its restaurant and the risks associated with that activity." *Id.*

The other Colorado cases discussed by the parties and the Court were decided either on motions for summary judgment or at trial. Likewise, the *Lopez* case in California, on which Cinemark relies most heavily, was decided on a motion for summary judgment. Another case prominently cited and quoted in Cinemark's reply brief, *Erickson v. Curtis Investment Co.,* 447 N.W. 2d 165, 169 (Minn. 1989), was decided by the trial court on a motion for summary judgment, and the even then, the motion was denied.[2].

Accordingly, this Court concludes that the motions to dismiss the Premises Liability Act claims for failure to state a claim should be denied. The Court accepts the magistrate judge's recommendation.

Before leaving the requirements of the Premises Liability Act, however, I need to address one other issue. The statute provides that the judge determines whether the plaintiff is a trespasser, a licensee, or an invitee. However, the issues of liability and damages are to be determined by the jury. C.R.S. 13-21-115(4). In this "limited role," the "only issue of law to be determined by the court is the classification of the injured plaintiff." *Vigil v. Franklin,* 103 P.3d 322, 328 (Colo. 2004). One could conclude, as the plaintiffs have suggested, that because the

---

[2] The quotation from the case that appears in the reply brief was actually taken from that court's listing of the defendant's arguments, not from the court's own conclusions.

classification of the plaintiffs as invitees is undisputed, this Court has nothing further to decide as a matter of law.

I agree, of course, that the issues of liability and damages are for the jury. However, to get to a jury, the plaintiffs must first state a plausible legal claim and then show that there is genuine dispute of material fact for the jury to resolve. This Court today holds only that plaintiffs have sufficiently stated a claim to survive a motion to dismiss under Rule 12(b)(6).

### B. Negligence.

Plaintiffs also asserted common law negligence claims. The magistrate judge recommended that those claims be dismissed in the seven cases before him. Those plaintiffs did not object to that recommendation. The recommendation is consistent with the Colorado Supreme Court's holding that "[t]he express, unambiguous language of subsection (2) of Colorado's premises liability statute evidences the General Assembly's intent to establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property." *Vigil,* 103 P.3d at 328. *Accord, Lombard,* 187 P.3d at 574.

During oral argument before the magistrate judge plaintiffs suggested that the negligence claims might have some basis, notwithstanding the Premises Liability Act, citing *Larrieu v. Best Buy Stores, L.P.,* 491 F. App'x 864 (10th Cir. 2012). Some plaintiffs still urge this Court to reserve judgment pending the outcome of *Larrieu.* In that case the court certified to the Colorado Supreme Court the question whether the Premises Liability Act applies to activity on the land but not directly or inherently related to the land. The case involved an accident where a customer was injured when he tripped as he and a store employee were carrying the tailgate of the customer's trailer, causing the tailgate to fall on him. The accident occurred on Best Buy's land but had nothing to do with the land as such. As the court put it, the case is about whether

the Premises Liability Act "effected a minor adjustment to state premises liability law or whether it rewrote much of state negligence law as well." *Id.* at 864. The question has not yet been answered.

I need not hazard a guess as to how that issue will be resolved. The present case does involve claims that are directly related to the land, namely, the construction and operation of the theater and, in particular, the means of direct access from the outside into a theater auditorium and the theater's means of monitoring and securing that access. If the Colorado Supreme Court issues a decision that logically suggests that plaintiffs' negligence claims were viable, and if the plaintiffs then wish to reinstate those claims, the Court will consider the situation at that time. On the present record, the negligence claims will be dismissed in all ten cases.

### C. **Wrongful Death Claims.**

In certain of the cases referred to the magistrate judge a parent or parents of a deceased victim included a wrongful death claim either under the "Wrongful Death Act," C.R.S. §§ 13-21-201 to 13-21-204, or more specifically under § 13-21-202. That section provides that "[w]hen the death of a person is caused by a wrongful act, neglect, or default of another, and the act, neglect or default is such as would, if death had not ensured, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensured, shall be liable in an action for damages notwithstanding the death of the party injured."

Cinemark responded to those claims in footnotes, arguing that they stand or fall with plaintiffs' Premises Liability Act claim. *See, e.g.,* case 12cv2704, Motion [#7] at 7 n.4. The plaintiffs did not say much in response. The magistrate judge essentially lumped the wrongful death claims with the negligence claims. This was understandable, not only because of the tepid

response but also because the heading preceding C.R.S. §§ 13-21-201 et seq. is "Damages for Death by Negligence."

Plaintiffs then objected to his recommendation and explained, largely for the first time, their position on the wrongful death claims. These plaintiffs now agree that the basis for liability, if any, is the Premises Liability Act. However, they argue that if liability is established under the Premises Liability Act, then Cinemark would have committed a "wrongful act" that would permit them to pursue a derivative claim under C.R.S. § 13-21-202. Essentially, these plaintiffs appear to agree with Cinemark on this issue. I note that Cinemark has not responded to the objections concerning the wrongful death claims.

Inasmuch as no one has presented any argument or authority as to why these parents cannot pursue a derivative claim under C.R.S. § 13-21-202, I conclude that these claims should not be dismissed so long as the Premises Liability Act claims are not dismissed.

## IV.   ORDER.

1. The recommendation of the magistrate judge as to the seven cases as to which the recommendation was directed, for example docket #41 in case 12cv2514, is ACCEPTED after de novo review, except as to the wrongful death claims in certain of the cases.

2. Defendants' motions to dismiss in each of the ten cases, for example docket #15 in case 12cv2514, are GRANTED IN PART AND DENIED IN PART. The negligence claims are dismissed with prejudice. The Premises Liability Act claims are not dismissed. To the extent wrongful death claims are derivative of liability under the Premises Liability Act, they are not dismissed.

---

3. Cinemark's unopposed motions to consolidate the ten listed cases for purposes of discovery and motion practice consistent with the terms of this Court's scheduling order issued on November 26, 2012, for example docket #48 in case 12cv2514, are GRANTED.

DATED this 17th day of April, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge